IGLESIA CATÓLICA, APOSTÓLICA Y ROMANA EN PUERTO RICO, DIÓCESIS DE SAN JUAN, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN PRIMERA, recurrido.

Núm. 1088.—*Sometido:* Junio 11, 1941. *Resuelto:* Julio 10, 1941.

*Heriberto Torres Solá* y *F. Pérez Almiroty,* abogados de la recurrente; el registrador recurrido compareció por escrito; *R. Cuevas Zequeira,* en representación de Arturo Torregrosa Iliceaga, como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un recurso gubernativo contra una nota del Registrador de la Propiedad de San Juan, Sección Primera, por virtud de la cual se negó a inscribir un censo.

Del escrito interponiendo el recurso y de los documentos acompañados al mismo resulta que en enero 20, 1917, por escritura otorgada en San Juan ante el notario público Jorge V. Domínguez, Antonio Alvarez Nava vendió a Arturo Torregrosa cierta propiedad en Santurce. En dicho documento se hizo constar que el inmueble vendido "reportaba como cargas, un censo a favor de Nuestra Señora de la Providencia de esta ciudad, por un mil seiscientos dólares de principal al interés del cinco por ciento anual" y al fijarse el precio y la forma en que se pagaba, se consignó "por el convenido precio y cantidad de diez y nueve mil seiscientos veinte dollars, de los cuales un mil seiscientos veinte dollars los retiene en su poder el comprador para saldar el censo a favor de Nuestra Señora de la Providencia de esta ciudad, por igual montante, . . . ."

Presentada la escritura en el registro, fué inscrita la transferencia a favor del comprador, haciéndose constar en la inscripción en relación con el censo, lo que sigue:

"...El terreno de esta finca es segregación de una parcela de 22 metros de frente por 62 de fondo, parte de la finca núm. 1602, inscrita al folio 24 de este tomo, inscripción primera, cuya finca principal aparece afecta a las cargas que se detallan en dicha inscripción primera, mencionándose como única carga en el documento, el censo a favor de Nuestra Señora de la Providencia, por $1,620, que en el Registro se reseña....del precio total $1,620 los retiene en su poder el comprador para saldar el censo a favor de Nuestra Señora de la Providencia, por igual montante, que grava los tres solares como procedentes de la finca principal, y cuya parte de precio la da por recibida en tal concepto el vendedor;....El Sr. Torregrosa acepta y toma a su cargo y exclusiva responsabilidad, el censo expresado que grava en cuanto a los terrenos las tres fincas vendidas a él, y quiere y consiente que el referido censo pase íntegro, y lo reconoce sobre la finca de este número y que, aun cuando no pueda verificarse en el Registro por falta de consentimiento de la parte acreedora, hace constar que es de su cuenta única el pago de los intereses o réditos como también el del capital del gravamen en el caso de su cancelación o redención."

. En agosto 16, 1934, se extendió nota por el registrador al margen de la inscripción "cancelando la mención del indicado censo y la obligación de pago del mismo, por haber transcurrido más de cinco años desde la fecha de la mención, a solicitud del dueño de esta finca señor Torregrosa, en *affidavit* de 14 de agosto de 1934." .

Así las cosas en el registro, Monseñor Eduino V. Byrne, Obispo de la Iglesia Católica Apostólica y Romana, Diócesis de San Juan, por su abogado, en abril 18, 1941, presentó para su inscripción en el mismo, en cuanto al censo, copias de la escritura de enero 20, 1917, y de otra otorgada en San Juan a cinco de julio de 1929 por el dicho Monseñor Byrne y Arturo Torregrosa en la cual, haciéndose referencia a la repetida escritura de enero 20, 1917, se dice:

"*Quinto:* Que a dicho otorgamiento no concurrió la Iglesia acreedora; y con el fin de que pueda hacerse constar de una manera fehaciente en el Registro de la Propiedad, la vigencia o gravamen del expresado censo sobre la finca descrita con la letra A, de la propiedad del compareciente Señor Torregrosa; el compareciente Monseñor Eduino V. Byrne, en su indicado carácter de Obispo Católico Apostólico Romano de Puerto Rico OTORGA que ratifica y aprueba en todas sus partes la relacionada escritura, y consiente que el enunciado censo, grave exclusivamente la finca descrita con la letra A."

La nota denegatoria del registrador, dice:

"DENEGADA la inscripción del censo que se reconoce en esta escritura, que se ha solicitado con vista de acta de ratificación por el Señor Obispo Católico de Puerto Rico, porque aun cuando el Señor Obispo acepta y perfecciona en documento público el contrato declarativo de censo, ya la mención de éste ha sido cancelada en el Registro, con fecha posterior a la de la ratificación, careciendo de facultades el Registrador para anular, con un documento de fecha anterior, el asiento de cancelación ya verificado, que ha creado un estado de derecho a favor de los esposos Torregrosa Casellas, y tomada anotación...."

En su escrito señala el recurrente los siguientes errores como cometidos por el recurrido, a saber:

"(a) Indebida aplicación del art. 17 de la Ley Hipotecaria, en cuanto entiende el registrador que las escrituras acompañadas de fecha anterior a la cancelación del censo, no pueden ser inscritas.

"(b) Al entender dicho funcionario que carece de facultades para anular con un documento de fecha anterior el asiento de cancelación ya verificado.

"(c) Al entender que el estado de derecho creado a favor de los esposos Torregrosa-Casellas, impide la inscripción solicitada."

Y luego argumenta extensa e inteligentemente los señalamientos.

██ No podemos sin embargo seguirlo en su argumentación porque en verdad en tanto en cuanto se refiere al fondo de la controversia, no cabe dentro de este recurso gubernativo.

Cancelada la mención en agosto 16 de 1934, se creó desde entonces un estado de derecho en el registro que no le es dable alterar por su propio acuerdo al registrador a virtud de documentos otorgados con anterioridad. La cuestión de si procede o no aplicar las leyes núm. 12 de la sesión especial de 1923, pág. 37, y núm. 12 también de la sesión especial de 1924, pág. 109, regulando la cancelación de gravámenes en el registro, a las que se acogió el dueño del inmueble, cuestión que envuelve la de la existencia o no existencia del censo en la actualidad, no es de la competencia del registrador sino de la del tribunal de justicia correspondiente.

Como esta propia corte decidió en *García* v. *Registrador*, 33 D.P.R. 950, 952:

"...En el registro se ha creado un estado de derecho favorable a Juan Negrón Díaz y sólo con su intervención puede alterarse. El registrador por sí solo no puede hoy decidir el caso del recurrente y actuó con razón derecha al negarse a inscribir el documento de acuerdo con lo que prescribe el artículo 20 de la Ley Hipotecaria.

" 'Hecha una inscripción en el registro de la propiedad,' decidió esta corte en el caso de *Bolívar et al.* v. *El Registrador*, 13 D.P.R. 375, 'el registrador carece de facultades para anularla sin el concurso y conformidad de los interesados, por ser facultad privativa de los

tribunales de justicia.' Y aquí si se accediera a las pretensiones del recurrente, la inscripción hecha a favor de Juan Negrón Díaz quedaría anulada en cuanto a treinta y siete céntimos de cuerda.

"Igual doctrina se estableció en el caso de *Dávila* v. *El Registrador de Caguas,* 28 D.P.R. 197, 200. Para un estudio más amplio de cuáles son los errores que pueden corregirse por el registrador y cuáles no, además del art. 254 y siguientes de la Ley Hipotecaria y los correspondientes del Reglamento, puede verse el tomo 4, pág. 94 y siguientes de la Legislación Hipotecaria por Galindo."

Recientemente en *De la Torre* v. *Registrador,* 57 D.P.R. 681, se reafirmó la doctrina en los siguientes términos: "Practicada y firmada una inscripción en los libros del registro a su cargo, el registrador de la propiedad carece de facultad para anularla y cancelarla por ser ello facultad privativa de los tribunales".

*Por virtud de lo expuesto debe el recurso declararse sin lugar y confirmarse la nota.*