PEDRO BERLINGERI MORALES, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Número: O-68-134    Resuelto: 29 de noviembre de 1968

*Jorge López Santiago,* abogado del recurrente; El Registrador recurrido compareció por escrito.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

En 21 de marzo de 1966 fue presentada para su inscripción en el Registro de la Propiedad de Guayama, la escritura Núm. 174 otorgada en 16 de diciembre de 1946 ante el notario Luis Domínguez Rovira por virtud de la cual los esposos Federico F. Basora y Eloísa Saldaña vendieron al recurrente Pedro Berlingeri Morales un inmueble consistente de una casa de madera situada en un solar "cuyo remanente hoy es de 48 pies de frente por 30 metros de fondo." El Registrador denegó la inscripción solicitada en 29 de abril de 1968 "por observarse que la finca objeto de venta figura inscrita a nombre de Raúl Rodríguez López y su esposa Mercedes Bachier personas distintas de los esposos vendedores y, además, no se acompaña el permiso de la Junta de Planificación aprobando la venta del remanente de la finca objeto de venta."

Es necesario relacionar primeramente la situación registral de la finca en cuestión. En su inscripción primera se describe así:

"URBANA: *Casa de madera* cobijada de zinc, de siete metros doce centímetros de frente y nueve metros treinta y cinco centímetros de fondo, *con su solar de cuarenta y cinco metros de frente con treinta de fondo,* situada en Arroyo barrio del Este, conteniendo otra casita de madera y tejas de barro de nueve metros de frente y tres de fondo; linda por el Este con solar de Doña Rosario Egan y el Río Nigua, por el Sud con Doña Adelaida Mary de Agostini; por el Norte con el expresado Río Nigua y la muralla del Pueblo y por el Oeste con la plaza de la Iglesia." Se le dio a esta finca el número 162. (Énfasis nuestro.)

Por la inscripción decimotercera la corporación Crédito y Ahorro Ponceño (a cuyo favor aparecía inscrita la finca)

la vende según su descripción en las inscripciones primera, séptima y undécima (¹) por escritura 11 otorgada ante el notario Matías Pomales Díaz, de 12 de marzo de 1935 a los esposos Federico F. Basora y doña Eloísa Saldaña, quedando inscrita a favor de estos últimos.

En el año 1937, los esposos Basora-Saldaña vendieron a doña Laura Belgodere Vda. de Nieves una *casa de maderas extranjeras radicada en la calle San Marcos del término municipal de Arroyo que mide treinta y nueve pies de frente por treinta y ocho pies de fondo, con un martillo anexo que mide diez y ocho pies de frente por veinticinco de fondo, y están radicados en un solar que mide cincuenta y un pies de frente por ciento veinticinco de fondo; colindando casa y solar por el Norte y Sur y Oeste con casas y solares propiedad del vendedor,* señor Basora; y por el Este con la calle de su situación. Presentada dicha escritura al Registro de la Propiedad, el Registrador procedió a inscribir toda la finca número 162 inscrita a nombre de los esposos Basora-Saldaña a nombre de la Sra. Belgodere Vda. de Nieves con el mismo número.

El día 16 de diciembre de 1946 los esposos Basora-Saldaña vendieron a don Pedro Berlingeri Morales por la referida escritura Núm. 174 una casa de madera, terrera, techada de zinc, que mide treinta y seis pies de frente por treinta y cinco pies de fondo, con un colgadizo anexo construido de iguales materiales que mide veinte y ocho pies de fondo, por diez y ocho pies de ancho, radicada en un solar cuyo remanente hoy es de cuarenta y ocho pies de frente por treinta metros de fondo, radicado en el barrio Este de la zona urbana de Arroyo, Puerto Rico, colindando casa y solar por la derecha

---

(¹) Por la inscripción séptima se dice, refiriéndose a la casa que ésta "mide hoy por el frente doce metros." Por la inscripción undécima se dice que en el solar, además de la casa que contiene, existían otras seis casas de madera las cuales han quedado reducidas hoy a dos casas más, siendo por tanto tres las casas que existen en dicho solar.

entrando, que es el Sur, hoy con casa de doña Laura Belgodere Viuda de Nieves, antes Adelaida Mari de Agostini; por la izquierda que es el Norte, con la muralla del pueblo y el río; por el frente, Oeste, con la plaza de la Iglesia y calle que la separa de ésta; por el fondo, Este, con el Río Nigua. Se dijo en dicha escritura Núm. 174 que la referida finca la adquirieron los esposos Basora-Saldaña, en cuanto al solar, con una extensión superficial de mil trescientos cincuenta metros cuadrados con varias edificaciones entre las cuales se encontraba la casa descrita por compra que hicieron al Banco Crédito y Ahorro Ponceño.

Dicha escritura Núm. 174 fue presentada al Registro de la Propiedad de Guayama el 9 de julio de 1964. Aparentemente el recurrente no proveyó al Registrador con unos documentos solicitados por éste porque al pie de la escritura presentada aparece la siguiente nota firmada por el Registrador:

"Devuelto el presente documento sin practicarse asiento alguno por desistir de su inscripción al presentante. Guayama a 14 de marzo de 1966."

En el ínterin falleció doña Laura Belgodere Vda. de Nieves en 25 de diciembre de 1952 y la propiedad inscrita a su favor pasó a ser, a título de herencia, de su hija María del Rosario Ramona Paula Nieves y Belgodere. La inscripción 15.ª de 8 de marzo de 1967 así lo indica. La heredera vendió dicha propiedad a doña Luisa Quiñones en 30 de marzo de 1957 y por la inscripción 16.ª de 8 de marzo de 1967 quedó inscrita a favor de esta última. En 22 de junio de 1959 doña Luisa Quiñones vendió la propiedad a don Raúl Rodríguez López y su esposa doña Mercedes Bachier, quedando inscrita a su favor por virtud de la inscripción 17.ª de 8 de marzo de 1967.

Don Pedro Berlingeri presentó otra vez al Registro la escritura 174 en 21 de marzo de 1966. Fue denegada la inscripción porque (1) dicha finca de 1350 metros cuadrados

de área y unas casas fue vendida por los esposos Basora-Saldaña a la Sra. Bergodere Vda. de Nieves y se inscribió tal venta, y no la de la casa y solar mencionados en la escritura 174, y la misma aparece inscrita a nombre de Raúl Rodríguez López y esposa, que son personas distintas de los esposos vendedores de apellido Basora-Saldaña; y (2) no se acompañó el permiso de la Junta de Planificación aprobando la venta de dicho remanente.

■ 1.—A los efectos de calificar un instrumento presentado en el Registro de la Propiedad para su inscripción (2) el Registrador tiene que atenerse a lo que resulte de los documentos presentados teniendo en cuenta los asientos del Registro referentes a la misma propiedad. *Esso Standard Oil Co.* v. *Registrador*, 88 D.P.R. 306 (1963); José Sabater, *Práctica Civil—Ley Hipotecaria*, pág. 406 (1945); Morell y Terry, *Comentarios a la Legislación Hipotecaria*, ed. 1927, tomo II, pág. 259. (3)

---

(2) Dispone el Art. 18 de la Ley Hipotecaria—30 L.P.R.A. sec. 43— que:

"Los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.

"Del mismo modo calificarán bajo su responsabilidad y para el único efecto de admitir, suspender o negar su inscripción o anotación, todos los documentos expedidos por la autoridad judicial.

"Contra la suspensión o denegación de inscripción o anotación preventiva no se darán más recursos que los señalados en este subtítulo, sin que los Jueces o Tribunales puedan obligar en otra forma a los Registradores a que inscriban o anoten en virtud de documentos judiciales."

(3) Roca Sastre, en su obra *Derecho Hipotecario*, T. II (1968), págs. 261 y ss. abunda sobre esta cuestión y aclara que el Registrador, en su función calificadora deberá tomar en consideración, todos los asientos que estén vigentes respecto a la finca a que se refiera el título a calificar, o sea, a los que con valor actual compongan o integren el contenido de la hoja o registro particular abierto a la finca de que se trate. El propósito de esta norma, como indica Roca Sastre es que al serle presentado un documento, el Registrador, para completar la calificación del mismo, debe contrastarlo con el Registro por si del examen de éste surge algún obstáculo que impida la inscripción. Estos obstáculos que principalmente pueden

Arguye el apelante que el Registrador "estuvo completamente desacertado al concluir que la totalidad de la 'finca constaba inscrita a nombre de persona distinta a los vendedores del recurrente' "; que si hubiera examinado las inscripciones y considerado lo que resulta de ellas debió concluir que "González [sic] López" y su esposa solamente son dueños de una porción de la finca y Basora y su esposa del remanente que vendieron a Berlingeri; que en la inscripción 14.ª se incurrió en el error de no abrirle folio registral a la nueva finca de 51 pies por 121 pies que Basora vendió a Laura Bergodere; que el Registrador persistió en este error, error que el Registrador aparenta reconocer en su anotación negando la inscripción; que no obstante la doctrina prevaleciente en cuanto a esta cuestión, es decir, la que reiteramos en *Esso Standard Oil Co.* v. *Registrador*, supra, el Registrador no puede darle más validez a un asiento del registro "que lo que del propio asiento se refleja" que si el Registrador "tuvo dudas en cuanto a si el error en el registro creaba un estado de derecho que impedía la inscripción de la venta del remanente de dicha finca al recurrente, bien

surgir del examen del Registro en el ejercicio de la función calificadora del Registrador son:

(1) *La no inmatriculación* de la finca objeto del título presentado, cuando éste carece de propia virtualidad inmatriculadora.

(2) El hecho de referirse el título presentado a alguna finca que si bien consta inmatriculada, *lo está en otro Registro distinto*.

(3) La circunstancia de que la finca o derecho real objeto del título presentado conste inscrito *a nombre de persona distinta* de la que en el título aparezca como otorgante o en cuyo nombre sea otorgado el acto de enajenación o gravamen. Así lo exige el principio de tracto sucesivo que regula el Art. 20 de la Ley Hipotecaria.

(4) La falta de *identidad* de la persona otorgante según el título presentado o de la finca o derecho real objeto del mismo, en relación a lo que conste en el Registro.

(5) La constancia registral de alguna *prohibición de enajenar* eficaz que impida la enajenación y gravamen objeto del título presentado.

Véase, también, Morell y Terry, op. cit., pág. 259; Galindo y Escosura, *Comentarios a la Legislación Hipotecaria*, T. II (1908), págs. 19 y ss.; José Sabater, op. cit. pág. 407.

pudo haber instado la rectificación del asiento cuando tuvo la oportunidad para así hacerlo cual fue al inscribir la declaratoria de herederos de Laura Bergodere. En esa ocasión tocaba al Registrador solicitar de dichos herederos que consintieran a la rectificación con vista de la escritura que motivó la inscripción 14.ª y de conformidad de los herederos de acuerdo a los Artículos 255 a 263 de la Ley Hipotecaria, Título 30 L.P.R.A. secs. 432–440 y si éstos se hubieren negado a dar su conformidad haber procedido conforme al Artículo 297 del Reglamento Hipotecario convocando a todos los interesados, co, digo, y a los Artículos 293 al 295 del Reglamento Hipotecario; T. 30 L.P.R.A. secs. 1284 a 1286 y 1288."

Contrario a lo que indica el recurrente, el Registrador no podía instar la rectificación en la inscripción decimocuarta porque en virtud de dicha inscripción y con motivo de sucesivas transmisiones, en la actualidad la finca se halla inscrita a favor de una tercera persona distinta al vendedor. Además, vendida solo parte de una finca, e inscrita equivocadamente la venta de toda ella, a tenor con el Art. 258 de la Ley Hipotecaria, 30 L.P.R.A. sec. 435, dicho error no es rectificable, Galindo y Escosura, op. cit., pág. 180, sino que lo procedente es que la parte perjudicada solicite al tribunal correspondiente el remedio que proceda.

Sostienen Galindo y Escosura que cuando sucede este error *y la finca no ha sufrido sucesivas transmisiones*, a pesar de que no es rectificable dicho error "pero puede el comprador presentar documento auténtico en que conste que consiente en la cancelación del asiento extendido a su favor, y verificada la cancelación, como figurará como dueño en el Registro el mismo que otorgó la escritura de venta, podrá inscribirse nuevamente el mismo título y quedará restablecida la verdad." Añade José Sabater, op. cit., pág. 752, "que cuando no existe perjuicio para un tercero o para alguna de las partes interesadas, el error puede rectificarse fácil-

mente habiendo avenencia entre las partes; pero si el error puede causar perjuicio en alguna forma, ni el registrador ni las partes pueden rectificarlo y es necesario recurrir al tribunal bajo cuya salvaguarda quedan las inscripciones y anotaciones hechas en el Registro de la Propiedad." Véase también Morrell y Terry, op. cit. T. 4, pág. 704.

De lo expuesto resulta que la inscripción 14.ª no era susceptible de ser rectificada por el Registrador, ni de que pudiera él instar la rectificación. Tampoco las partes podrán rectificarla porque, apareciendo inscrita a favor de Raúl Rodríguez López y su esposa la totalidad de la finca en cuestión, se había creado un estado de Derecho y solo con la intervención de los esposos Rodríguez López podía alterarse dicho estado. *Iglesia Católica* v. *Registrador*, 59 D.P.R. 110 (1941); *García* v. *Registrador*, 33 D.P.R. 950 (1925); *Dávila* v. *Registrador*, 28 D.P.R. 197 (1920); *Bolívar* v. *Registrador*, 13 D.P.R. 375 (1907).

2.—Se apunta que el Registrador incidió al denegar la inscripción de la transacción objeto de la referida escritura Núm. 174 porque "no se acompaña el permiso de la Junta de Planificación aprobando la venta del remanente de la finca objeto de venta."

En *Rodríguez* v. *Registrador*, 66 D.P.R. 772 (1946) dijimos que *hechas e inscritas* varias segregaciones con anterioridad a la fecha de vigencia del Reglamento de Lotificación, debe inscribirse la venta del remanente de la finca principal realizada con posterioridad a dicha fecha sin tenerse que solicitar a esos fines permiso alguno de la Junta de Planificación. En *Mari* v. *Registrador*, 72 D.P.R. 888, 890 (1951), se presentó para inscripción una escritura de corrección de cabida y descripción de una finca que, según el registro, tenía una cabida de 300 metros cuadrados pero que según el certificado de mensura aparecía tener solo 189.77 metros cuadrados. Sostuvimos la denegatoria de inscripción de la rectificación de cabida, inscripción que fue solicitada sin acom-

pañarse del correspondiente plano aprobado por la Junta de Planificación o del certificado de dispensa expedida por ésta. A esos efectos dijimos que de la diferencia entre la cabida inscrita y la mensura "lógicamente podía inferirse que ha habido una segregación y que tal segregación pudo efectuarse con posterioridad al 5 de septiembre de 1944, fecha de la vigencia del Reglamento de Lotificación . . . . De haberse hecho la segregación con anterioridad a la vigencia del Reglamento de Lotificación la intervención de la Junta, desde luego, sería innecesaria . . . . Pero en este caso ha debido acompañarse la correspondiente escritura de segregación demostrativa de la fecha en que la misma se hizo."

En el caso que nos ocupa se trataba de inscribir un remanente de una finca sin que apareciera del registro inscripción alguna de las segregaciones de la misma previamente realizadas. De manera que es de aplicación la norma que establecimos en *Mari*, supra.

Sin embargo, en caso que mediante el recurso judicial adecuado se rectifique el alegado error y en tal virtud se solicite la inscripción de las segregaciones de la finca en cuestión, la necesidad del previo permiso de la Junta de Planificación dependerá, como en *Rodríguez*, supra, de la fecha en que dichas segregaciones se realizaron. Por supuesto, debidamente inscritas las segregaciones, la inscripción de la venta del remanente puede realizarse sin la intervención de la Junta de Planificación.

*En vista de lo expuesto, se confirmará la nota recurrida.*