JUANITA FELIBERTI MERCADO y RAMÓN RIVERA FELIBERTI, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

*Número:* O-73-227        *Resuelto:* 30 de mayo de 1975

*Mario Báez García*, abogado de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

Mediante escritura otorgada el 14 de agosto de 1972, los esposos Don Manuel Ramos Ponce y Doña Rosa Vidal vendieron a Doña Juanita Feliberti Mercado y al hijo de ésta Don Ramón

Rivera Feliberti, ambos mayores de edad, la primera de estado viuda, de oficios domésticos y vecina de Mayagüez, el segundo soltero, propietario y vecino de los Estados Unidos de Norte América, de paso por Mayagüez, por partes iguales, la siguiente finca:

"URBANA: Solar número veinte 'A', del Bloque 'G' de la Urbanización Mayagüez Terrace, en el barrio Miradero, de Mayagüez, con un área de doscientos treinta y siete metros y medio cuadrados, colindante por el NORTE, con la calle número 'UNO' y mide nueve metros y medio; por el SUR, en nueve metros y medio, con el solar número trece 'B'; por el ESTE, en veinticinco metros, con el solar número diez y nueve 'B', y por el OESTE, en veinticinco metros con el solar número veinte 'B', todos del mismo bloque de la Urbanización. Enclava una casa de concreto armado, de una sola planta, con techo de azotea y piso de lozas del país, que constituye una vivienda independiente, consistiendo de tres dormitorios, con sus closets, sala y comedor en una sola unidad, cocina con su closet, cuarto de baño y balcón." Inscrita al folio 67 del tomo 363 de Mayagüez, finca número 10945, inscripción séptima.

El precio de venta fue la suma convenida de $19,000.00, pagados en moneda de curso legal en la siguiente forma: (a) $5,000.00 que se entregaron con antelación al otorgamiento de la escritura y (b) $14,000.00 que se pagaron el mismo día de su otorgamiento en presencia del notario autorizante; por lo cual los vendedores le otorgaron a los compradores carta de pago formal por el importe total del referido precio de venta.

Presentada la escritura en el Registro de la Propiedad de Mayagüez para su inscripción, el Señor Registrador procedió a inscribir la finca a nombre de los adquirentes, pero haciendo constar en una nota al pie de la inscripción que ésta:

". . . se practicó con el defecto subsanable de no haberse acreditado el estado civil que tenía la señora Feliberti Mercado cuando hizo entrega de parte del dinero constitutivo del precio de la venta."

Los compradores han recurrido ante nos solicitando que revoquemos dicha nota y ordenemos al Señor Registrador de la Propiedad recurrido que proceda a practicar la inscripción solicitádale sin el defecto subsanable mencionado.

De entrada procede consignar aquí que el hecho expositivo *"Cuarto"* de la referida escritura, literalmente lee así:

"CUARTO: Constituye el precio de esta venta la suma ajustada y convenida de DIEZ Y NUEVE MIL DOLARES ($19,000.00), moneda americana de curso legal que se entregan en la siguiente forma: CINCO MIL DOLARES ($5,000.00) que se entregaron el día veinticuatro de mayo de mil novecientos setenta y dos; *SIENDO EL ESTADO CIVIL DE TODOS EL MISMO QUE TIENEN EN EL DIA DE HOY,* y Catorce Mil Dólares ($14,000.00) que se entregan en este acto, en efectivo metálico, a presencia del Notario y a entera satisfacción, otorgándole por tanto los vendedores a los compradores formal recibo y carta de pago conforme a derecho, por el importe total del precio de la venta." (Mayúsculas y bastardillas nuestras.)

En la comparecencia de la escritura el Notario autorizante da fe del conocimiento personal de los comparecientes:

". . . y por sus manifestaciones también la doy de su edad, *estado,* profesión y vecindad." (Bastardillas nuestras.)

Los recurrentes alegan, para sostener su recurso, que la Ley Notarial vigente exige y requiere a los Notarios, entre otras cosas, dar fe acerca de la edad, estado, profesión y vecindad de los otorgantes, según sus dichos.([1]) Alegan además que en el hecho "CUARTO" transcrito se hizo constar por los otorgantes, entre los cuales estaba Doña Juanita Feliberti Mercado, que para el día 24 de mayo de 1972, fecha en que se hizo el primer pago, el estado civil de todos era el mismo que tenían en la fecha de otorgamiento de la escritura, 14 de

---

([1]) "Los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos. *También* darán fe acerca de la edad, *estado,* profesión y vecindad de los otorgantes, con relación al *dicho de los mismos,* . . . ." Sec. 16—Ley Notarial de 27 de junio de 1956, efec. desde el 1 de enero de 1957; 4 L.P.R.A. sec. 1016. (Énfasis suplido.)

agosto de 1972; o sea, que los vendedores esposos Ramos Ponce-Vidal eran casados entre sí, que *Doña Juanita Feliberti Mercado era viuda* y su hijo Don Ramón Rivera Feliberti soltero.

La posición del Señor Registrador es que la simple manifestación de los recurrentes de que su estado civil para el 24 de mayo de 1972 era el mismo que tenían el día del otorgamiento de la escritura es insuficiente para destruir o ignorar los derechos de aquellos que pudieran tener algún interés en los bienes pertenecientes a la sociedad de gananciales que existió entre la recurrente Juanita Feliberti Mercado y su difunto esposo. Sostiene además que la Ley Hipotecaria no reconoce presunción alguna en cuanto al estado civil de una persona en un momento dado, por lo que el estado de viudez a la fecha de otorgamiento de la escritura no establece presunción de que también lo fuera para una fecha anterior, a pesar de sus dichos al efecto. En apoyo de su contención cita los casos de *Martínez* v. *Registrador*, 62 D.P.R. 862 (1944); *Vilella* v. *Registrador*, 64 D.P.R. 424 (1945) y *Bacó* v. *Registrador*, 63 D.P.R. 697 (1944). Aduce que "[e]n el Registro no existe presunción de veracidad" y que "[l]os extremos hay que acreditarlos con documentos fehacientes", *Benítez* v. *Registrador*, 36 D.P.R. 570 (1927); y sugiere que conforme a lo resuelto en *Santaliz* v. *Registrador*, 71 D.P.R. 84 (1950), "[u]no de los medios que puede utilizar la Recurrente para acreditar su verdadero estado civil es la información ad perpetuam."

No le asiste la razón al Señor Registrador recurrido. Señala como autoridad casos que resuelven situaciones claramente distinguibles de la del presente recurso. En *Martínez* v. *Registrador*, supra, aparecía inscrita una compraventa en la que se hizo constar que el comprador era casado al momento de la adquisición. Compareció luego dicho comprador al Registro alegando haberse casado con posterioridad a la compraventa, por lo que solicitaba se enmendara la inscripción para que el inmueble apareciera inscrito con el carácter de privativo.

Confirmamos allí la denegatoria del Registrador, al resolver que al quedar inscrita la compraventa a favor de un comprador siendo éste casado, se creó un estado de derecho que el Registrador no puede cambiar a base de documentos en los que ni siquiera comparece la supuesta esposa. *Martínez*, pág. 865.

En *Vilella* v. *Registrador*, supra, el recurrente compareció con su esposa al otorgamiento de una escritura de compraventa de dos fincas, haciendo constar que seis años antes las había comprado de los vendedores en cuya fecha anterior era soltero. El Registrador inscribió las fincas como bienes gananciales con el defecto subsanable de no acreditarse que el comprador recurrente fuese soltero al adquirir las fincas originalmente. Para subsanar el defecto el comprador presentó un acta aclaratoria suscrita por él y su esposa así como por los demás otorgantes de la escritura inscrita, y una certificación de la celebración del matrimonio. El Registrador denegó la subsanación del defecto por entender que la certificación matrimonial no era suficiente para establecer el estado civil del comprador al momento de adquirir las fincas originalmente, y por entender que la subsanación podía hacerse solamente en virtud de pronunciamiento judicial. Confirmamos la nota por el fundamento de que la certificación no destruye la posibilidad de que el comprador estuviese casado al momento de la adquisición original, y por no ser suficiente para acreditar el carácter privativo de los bienes el hecho de que la esposa compareciente lo consignare por acta aclaratoria.

En *Bacó* v. *Registrador*, supra, se planteó una situación parecida a la del presente caso. La recurrente había sometido al Registro una escritura de compraventa en la cual expresaba ser viuda. Consignaba, además, el haber hecho el pago convenido con anterioridad al otorgamiento, *sin expresar su estado civil al momento de efectuar dicho pago*, por lo cual el Registrador inscribió con el defecto subsanable de no haberse acreditado tal extremo. Dijimos entonces que el hecho de que la recurrente fuese viuda al momento del otorgamiento no establecía

presunción alguna de que lo hubiese sido al momento de haber efectuado la prestación previa aludida.

En *Santaliz* v. *Registrador*, supra, se inscribió una compraventa con el defecto subsanable de no haberse expresado "el estado civil del comprador en la fecha [en] que se concertó el contrato." Para suplir su omisión y así subsanar el defecto, el recurrente había presentado al Registro un certificado de matrimonio fechado con posterioridad al otorgamiento de la escritura inscrita, y dos declaraciones juradas, una suya y otra de su hermana, acreditando que él no estaba casado al momento de adquirir el inmueble. Confirmamos la nota del Registrador por no ser los *affidavit* documentos suficientes para subsanar defectos en el Registro, y sugerimos la información *ad perpetuam* como una alternativa adecuada.

■ La jurisprudencia citada por el Registrador recurrido que examinamos precedentemente es claramente inaplicable a los hechos del presente caso. En los casos analizados un cambio en el estado civil del otorgante ha motivado el defecto señalado. No se trata aquí de un intento de suplir alguna información esencial que se hubiese omitido en el documento presentado, ni de alterar un estado ya inscrito, ni surge de la faz de la escritura presentada que exista la menor duda o confusión en cuanto al estado civil de alguno de los otorgantes al momento de hacer el negocio o acto jurídico que deba dar lugar a la operación registral solicitada, como ocurrió en *Benítez* v. *Registrador*, supra. Surge de la propia escritura que la compradora era viuda a la fecha del pago del anticipo.

Es de aplicación a los hechos que presenta el caso de autos la clara disposición del Art. 18 de nuestra Ley Hipotecaria, (²) que en torno a la función calificadora de los registradores establece que éstos ". . . calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud

---

(²) 30 L.P.R.A. sec. 43. Para una amplia discusión en torno al referido artículo puede verse, Roca Sastre, *Derecho Hipotecario*, T. II, 6ta. ed., 1968, págs. 251 *et seq.*

se solicite la inscripción y la capacidad de los otorgantes *por lo que resulte de las mismas escrituras.*" (Énfasis suplido.)

■ Se consigna en la escritura objeto de la nota que provocó el presente recurso que el estado civil de la compradora-recurrente lo era el de viuda al momento del otorgamiento y "el mismo" al momento de haber hecho ésta el primer pago. No surgiendo que haya habido cambio en el estado civil de la compradora desde la fecha del pago del anticipo del precio, sino que por el contrario, se ratifica ésta en que su estado civil a la fecha del otorgamiento es el mismo que a la fecha del pago anticipado deberá el Señor Registrador recurrido atenerse a lo que resulta del documento presentado. *Berlingeri* v. *Registrador,* 96 D.P.R. 706 (1968) ; *Esso Standard Oil Co.* v. *Registrador,* 88 D.P.R. 306 (1963) ; *Vda. de Martínez* v. *Registrador,* 89 D.P.R. 645 (1963). Véanse además: *Autoridad de Fuentes Fluviales* v. *Registrador,* 71 D.P.R. 847 (1950) ; *Autoridad de Fuentes Fluviales* v. *Registrador,* 62 D.P.R. 753, 756 (1944) ; *Matos* v. *Registrador,* 61 D.P.R. 94, 96 (1942) ; *Graciani* v. *Registrador,* 25 D.P.R. 44, 47 (1917) ; *Turner* v. *El Registrador de San Juan,* 22 D.P.R. 573 (1915).

En vista de lo antedicho, *se revocará la nota del Señor Registrador recurrido y se le ordenará que inscriba el título atinente al inmueble objeto del presente recurso sin defecto alguno.*