CARMEN NEGRÓN, recurrida, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrente.

*Número:* O-74-369     *Resuelto:* 13 de enero de 1976

*Luis A. Mójica Sandoz, pro se,* en su carácter de recurrente; *Juan Ramos Lebrón,* notario que autorizó la correspondiente escritura de compraventa a favor de Carmen Negrón, aquí recurrida, quien compareció para informar que nada tiene que alegar en este recurso de revisión.

El Juez Asociado Señor Martín emitió la opinión del Tribunal.

El Registrador de la Propiedad de Caguas denegó la inscripción del traspaso de título de un solar propiedad del Municipio de San Lorenzo vendido a Carmen Negrón quien lo poseía en calidad de usufructuaria. Los fundamentos de la denegatoria fueron los siguientes: (1) por no surgir de los documentos presentados que se hubiese cumplido con las disposiciones del Art. 98 de la Ley Municipal, según fuera enmendado por la Ley Núm. 119 de 24 de junio de 1968, 21 L.P.R.A. sec. 1651, Sup. Acum. 1973; y (2) por no haberse acreditado el carácter de usufructuaria de la compradora.

En cuanto al primer apuntamiento examinemos la ordenanza municipal Núm. 12, serie 1973–74, aprobada por la Asamblea Municipal de San Lorenzo en 29 de octubre de 1973, que se titula "para confirmar un usufructo sobre un solar y para la venta del mismo por el Municipio de San Lorenzo, Puerto Rico, a favor de Carmen Negrón y para otros fines."

La autorización para la venta del referido solar y el precio fijado surge de los siguientes dos párrafos de la ordenanza Núm. 12 presentada al Registrador:

"Por cuanto: *El Artículo 70* de la vigente Ley Municipal y la *Ordenanza número 5 Serie 1956–57* aprobada al efecto, autoriza a aprobar su venta, a solicitud de los que tienen edificaciones en solares de este Municipio de los solares ocupados por los mismos, sin necesidad de subasta pública especificándose los derechos respectivos del vendedor y el comprador, su reconstrucción en caso de deterioro o destrucción. [Énfasis suplido.]

.    .    .    .    .    .    .    .

POR CUANTO: Hay la *Ordenanza Núm. 11, Serie 1957–58,* que autoriza la venta de los solares a un 25% del *precio de Tasación."* (Énfasis suplido.)

De la faz del primer Por Cuanto de la ordenanza municipal citada precedentemente que fuera presentada al Registrador surge que la venta se autorizaba conforme lo autorizaba el Art. 70 de la Ley Municipal y la Ordenanza Núm. 5, serie 1956–57 aprobada al efecto. Véase Ley Núm. 53 de 28 de abril de 1928, Art. 70, según fuera enmendada por la Ley Núm. 61 de 16 de junio de 1954. En el segundo Por Cuanto transcrito se menciona una ordenanza posterior, que es la Núm. 11, serie 1957–58, que autoriza la venta de los solares cedidos en usufructo a un 25% del precio de tasación.

Al ser aprobadas las referidas ordenanzas Núm. 5 y 11 regía el Art. 70 de la Ley Municipal, ya modificado a la fecha de la venta que nos ocupa, que disponía lo siguiente:

"Todo concesionario de un solar edificado en virtud de concesión anterior, que interesare obtener la propiedad definitiva del solar cedídole, la podrá adquirir sin necesidad de subasta; y la Asamblea Municipal podrá así resolverlo por medio de ordenanza en que por cada zona urbanizada se fije el tipo a que deben ser vendidos los referidos solares, debiéndose tomar en cuenta al adoptar la ordenanza las zonas en que han sido divididos los solares y el valor que se fijó a éstos en la última *tasación de la propiedad* practicada por el Negociado de la Tasación Científica del Departamento de Hacienda." (Énfasis suplido.)

A la luz del Art. 70 de la Ley Municipal y de la Ordenanza Núm. 11 de 1957–58 (el texto de la Núm. 5 no surge del expediente) es evidente que la venta del solar en cuestión se efectuó conforme al valor fijado por el Departamento de Hacienda a los fines de la contribución sobre la propiedad, sin tener en cuenta que dicho Art. 70 había sido enmendado con el propósito de establecer nuevos criterios que habrían de observarse para las ventas de solares concedidos en usufructo. El texto del nuevo Art. 98 es el siguiente:

"Todo usufructuario de un solar edificado en virtud de concesión anterior podrá obtener la propiedad definitiva del solar usufructuado, sin necesidad de subasta, y la Asamblea Municipal podrá así resolverlo por medio de ordenanza en que se establezcan las normas para dichas ventas y se fije por cada zona urbanizada el tipo a que deben ser vendidos los referidos solares. Este tipo se determinará a base de la valoración que al efecto haga el Departamento de Hacienda, entendiéndose que al fijar dicho tipo, se tomarán en cuenta las zonas en que han sido incluidos los solares. Estos tipos se revisarán por tal Departamento de Hacienda por lo menos cada tres (3) años. El Alcalde llevará a cabo las ventas conforme a dichos tipos y normas, sin que sea necesaria la adicional participación de la Asamblea Municipal en cada operación." Ley Núm. 119 de 24 de junio de 1968, 21 L.P.R.A. sec. 1651.

Antes de la venta en cuestión la norma que se seguía para la determinación del precio era "el valor fijado en la última tasación de la propiedad practicada por el Negociado de la Tasación Científica del Departamento de Hacienda." Art. 70, *supra*. Evidentemente la valoración era la que se utilizaba para fines contributivos. Sin embargo, a la fecha en que se autorizó la transacción de marras el nuevo Art. 98 de la Ley Municipal ya disponía que: (1) la Asamblea Municipal autorizará la venta por medio de ordenanza en que se establecieran las normas para las ventas y se fijara por cada zona urbanizada el tipo a que debían ser vendidos los solares, 21 L.P.R.A. sec. 1651, y que (2) dichos tipos *"se determinarán a base de la valoración que al efecto* haga el Departamento de Hacienda," cuyos tipos *"se revisarán* por tal Departamento . . . por lo menos cada tres (3) años." Sec. 1651, *supra.* (Énfasis suplido.) El criterio de valoración, por tanto, dejó de ser el de fines contributivos y pasó a ser el del valor en el mercado ya que la ley requiere una valoración *al efecto,* o sea, para fines de la venta. Aunque la redacción del Art. 98 no es la más precisa, toda vez que se usan los términos "tipo" y "valoración" con vaguedad lamentable, interpre-

tamos el sentir legislativo como una exigencia obligatoria de control de la valoración de los terrenos por el Departamento de Hacienda, que en materia fiscal ejerce la supervisión de los municipios, los que a su vez son criaturas de la Legislatura que funcionan con poderes delegados. Constitución de Puerto Rico, Art. VI, Sec. 1; Ley de Relaciones Federales, Sec. 37.

Esta conclusión está corroborada por las expresiones de las Comisiones de lo Jurídico Civil y de Gobierno Estatal, y Municipal del Senado al considerar la legislación aludida contentivas de su preocupación de que las ventas de los solares cedidos en usufructo se hicieran a precios demasiado por debajo del que se cotiza en el mercado. Por ello recomendaron que el precio se determinara sobre la base de la valoración que al efecto hiciere el Departamento de Hacienda por lo menos cada tres años. 22 *Diario de Sesiones*, Parte 4, 21 de mayo de 1968, pág. 1706.

Antes de la enmienda de 1968 al Art. 70 dijimos, en *Amaral* v. *Registrador*, 77 D.P.R. 921 (1955), que los municipios no venían obligados a adoptar el valor de tasación del Negociado de Tasación Científica por considerar que la frase "deberán tenerse en cuenta . . . las zonas en que han sido divididos los solares y el valor que se fijó a éstos en la última tasación de la propiedad" era meramente directiva, viniendo el municipio obligado tan solo a tomarlo en consideración al fijar a iniciativa propia el precio de venta actual. La enmienda aludida cambió totalmente la redacción del Art. 70 (hoy 98) en la forma citada precedentemente para exigir que los tipos "se determinarán" a base de la valoración que al efecto haga el Departamento de Hacienda, por lo menos cada tres años.

■ La frase "debiéndose tomar en cuenta" usada en relación con las zonas en que se dividían los solares y en relación con el valor fijados a los solares se limitó en la nueva versión estrictamente a las zonas en que están incluidos los

solares, quedando fuera la relación con la valoración de los mismos. El alcance de la enmienda fue el de obligar a los municipios a adoptar la valoración que al efecto hiciera dicho Departamento.

■ La nueva norma legislativa tuvo el resultado de dejar sin efecto las ordenanzas municipales Núm. 5, serie 1956–57, y Núm. 11, serie 1957–58, en tanto en cuanto autorizaban la venta de solares cedidos en usufructo "a un 25% del precio de tasación." Por consiguiente resulta ser inválida la venta del solar objeto de este recurso, cuya autorización está basada en la norma imperante durante la vigencia del Art. 70 de la Ley Municipal y de las dos ordenanzas Núms. 5 y 11 que fueron aprobadas al amparo del Art. 70.

■ Además, en la ordenanza que al efecto se apruebe deberá, conforme lo manda la ley, establecerse las normas para la venta y se fijará por cada zona urbanizada el tipo a que deben ser vendidos los solares en cuestión. La ordenanza que tuvo el Registrador ante sí no cumple con los requisitos de ley.

■ El Registrador recurrente no podía descansar en la presunción controvertible de que la ley ha sido acatada, 32 L.P.R.A. sec. 1887 (32), sino que estuvo justificado en denegar la inscripción solicitada por surgir de la faz de los documentos presentados que la actuación de la Asamblea Municipal de San Lorenzo era contraria a ley, lo que constituye un defecto insubsanable. Art. 65, Ley Hipotecaria, 30 L.P.R.A. sec. 114.

■ Aunque no es necesario discutir el segundo fundamento de la denegatoria estimamos que el carácter de usufructuaria de la compradora se hace constar en el hecho expositivo "Tercero" de la escritura presentada y surge además del tercer "por cuanto" de la ordenanza municipal que autoriza la compraventa. De no aparecer del propio registro indicación alguna demostrativa de lo contrario, debe el Señor Registrador atenerse a lo que de los documentos presentádosle se desprende.

Art. 18 de la Ley Hipotecaria, 30 L.P.R.A. sec. 43; *Feliberti Mercado* v. *Registrador*, 103 D.P.R. 927 (1975), y casos allí citados.

*En vista de lo anterior se confirmará la nota recurrida que deniega la inscripción solicitada.*

El Juez Asociado Señor Negrón García concurre en el resultado. El Juez Asociado Señor Díaz Cruz disintió en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 13 de enero de 1976

Doña Carmen Negrón, vecina de San Lorenzo y quien allí posee en usufructo un solar, lo compró al Municipio pero el Registrador denegó la inscripción del título por incumplimiento con el Art. 98 de la Ley Municipal según reescrito por Ley Núm. 119 de 24 de junio de 1968 (21 L.P.R.A. sec. 1651 Supto.) que transcribimos:

"Todo usufructuario de un solar edificado en virtud de concesión anterior podrá obtener la propiedad definitiva del solar usufructuado, sin necesidad de subasta, y la Asamblea Municipal podrá así resolverlo por medio de ordenanza en que se establezcan las normas para dichas ventas y se fije por cada zona urbanizada el tipo a que deben ser vendidos los referidos solares. Este tipo se determinará a base de la valoración que al efecto haga el Departamento de Hacienda, entendiéndose que al fijar dicho tipo, se tomarán en cuenta las zonas en que han sido incluidos los solares. Estos tipos se revisarán por tal Departamento de Hacienda por lo menos cada tres (3) años. El Alcalde llevará a cabo las ventas conforme a dichos tipos y normas, sin que sea necesaria la adicional participación de la Asamblea Municipal en cada operación."

Bajo el nuevo texto sigue siendo la Asamblea Municipal la que en ordenanza establece las normas para la venta y fija "por cada zona urbanizada el tipo a que deben ser vendidos

los referidos solares." La Asamblea Legislativa no le dio inge-
rencia alguna al Departamento de Hacienda(¹) en estas ventas
de solares que es por necesidad una operación local. La in-
dicación en el Art. 98 de que el tipo (a que deben ser ven-
didos los solares) se determinará a base de la valoración
que al efecto haga el Departamento de Hacienda es sólo una
variación semántica y sintáctica del anterior Art. 70 que
remitía la Asamblea Municipal al valor que se fijó (a los
solares) en la última tasación de la propiedad practicada
por Hacienda. El anterior Art. 70 conminaba al Municipio
a "tomar en cuenta" la tasación por Hacienda; el Art. 98
actual la instruye para que tome la valoración como base.
Que antes se usara el vocablo "tasación" y hoy "valoración"
no resta facultad alguna a la Asamblea Municipal que es el
organismo mejor informado y en poder de todos los elementos
de juicio para tomar una decisión correcta sobre la solicitud
del vecino. En uno u otro caso el Municipio no viene
inexorablemente obligado a hacer coincidir el precio de

(¹) Nunca fue el sentir legislativo como lo interpreta la mayoría
adoptar la "exigencia obligatoria de control de la valoración de los terrenos
por el Departamento de Hacienda." Todo lo contrario se desprende del
Informe de la Comisión de lo Jurídico Civil del Senado (*Diario de Sesio-
nes*—1968, Vol. 22, Parte 4, pág. 1705 y ss.) que dice:

"ALCANCE DE LA MEDIDA

El proyecto tiene por propósito acortar el trámite para la venta de
solares propiedad de los gobiernos municipales a los ciudadanos que los
poseen en calidad de usufructuarios, arrendatarios u ocupantes que desean
adquirirlos. Este propósito se lograría mediante las enmiendas que se
proponen a los Artículos 98 y 99 de la vigente Ley Municipal.

El Secretario de Hacienda favorece la medida ya que la misma recoge,
en parte, las recomendaciones sobre el particular hechas por la Comisión
de Relaciones con los Ciudadanos en su Informe en el que, después de
criticar el procedimiento actual, concluye con la siguiente expresión:—'La
lentitud y la complejidad del trámite son obstáculos para la compra de
solares municipales por los ciudadanos que los usufructan y desean adqui-
rirlos para poder hacer uso de las facilidades de crédito para mejoras.'"

Se cumple el acortamiento de trámite instruyendo, como lo hace el
nuevo estatuto, la aprobación de una ordenanza básica que permite la venta
de solares por el Alcalde sin ulterior intervención de la Asamblea.

venta del solar con su valor de tasación. Prevalece la situación que instó a este Tribunal a así declararlo en *Amaral* v. *Registrador,* 77 D.P.R. 921, 923 (1955). La valoración o tasación por Hacienda sigue siendo mero punto de referencia.

Una faena retórica no debe disminuir la utilidad social de este programa de venta de solares que tiene el propósito de abrir avenidas de crédito y financiamiento para los vecinos en distintos municipios, habilitándolos para reconstruir y restaurar sus viviendas. Sería infinitamente más complicado y laborioso para un vecino de Jayuya o de Cabo Rojo o de Gurabo esperar por la acción del Departamento de Hacienda antes de que pueda comprar su solar al Municipio. De ahí la razón para que la Asamblea Legislativa dejara este trámite enteramente en manos del Gobierno Municipal.

Hay que recordar que la función principal del Departamento de Hacienda es la recaudación de tributos con que sufragar los gastos de la gestión gubernamental. Las ventas de solares municipales no responden a un propósito fiscal. Tienen gran afinidad con los programas dirigidos a mejorar la vivienda y a eventualmente dar a cada familia título de propiedad sobre la tierra en que se afinca.

No es necesario el control por Hacienda de estas ventas de solares toda vez que en un municipio administrado en forma honrada y eficiente, ningún riesgo hay de que se cedan por precios irrisorios, como tampoco lo habrá de que se malverse la propiedad pública en compraventa de equipos, adjudicación de obras, contratación de servicios y en las restantes operaciones económicas que le permite su autonomía. [2]

---

[2] Así también lo considera la Asamblea Legislativa de Puerto Rico que al aprobar la Ley Núm. 6 de 14 de octubre de 1975 aumentó de $2,000, $3,000 y $4,000 a $30,000 para todos los municipios el límite de costo de obra o mejora pública exenta de subasta.

Ahora bien, la documentación presentada al Registro lo que expresa es un posible cumplimiento con el derogado Art. 70 de la Ley Municipal por lo que está enferma de obsolescencia. Fue por tanto correcta la actuación del Registrador denegando la inscripción, único resultado en que concurro con la opinión de mayoría.