LA CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE P. R., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE PONCE, SECCIÓN II, recurrido.

*Número:* O-84-307    *Resuelto:* 30 de junio de 1986

---

*José Ramón Quiñones Coll,* abogado del recurrente; la Registradora recurrida compareció por escrito.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

La Corporación de Renovación Urbana y Vivienda de Puerto Rico (C.R.U.V.) instó sendas acciones judiciales de ejecución de hipoteca por la vía ordinaria contra los dueños de seis apartamentos en el Condominio Residencial Tibes II de Ponce. Por no encontrarse residiendo, al momento de la radicación de las demandas, en los respectivos apartamentos del mencionado condominio, los demandados en dichos casos civiles fueron emplazados por edictos. Regla 4.5 de Procedimiento Civil. La parte demandante sometió declaraciones juradas en cada caso para acreditar tales hechos. En todos los

casos se dictó sentencia en rebeldía a favor de la C.R.U.V. Dichas sentencias también fueron notificadas a los demandados por medio de edictos. Regla 65.3 (b) de Procedimiento Civil.

Con anterioridad a la celebración de la venta judicial para hacer efectivas las sentencias recaídas, el alguacil del Tribunal Superior de Ponce expidió los avisos de venta, que fueron publicados durante dos semanas en tres lugares públicos del municipio. (¹) Regla 51.8 (a) de Procedimiento Civil. Además, dichos avisos fueron publicados en la Colecturía y en la Escuela Pública más cercanas a la dirección residencial conocida de los demandados.

A todas las subastas judiciales compareció la C.R.U.V. como único licitador, adjudicándosele las referidas propiedades. Las escrituras públicas de las ventas judiciales, preparadas por el notario José Ramón Quiñones Coll, fueron presentadas para inscripción en el Registro de la Propiedad de Ponce, Sec. II, el 2 de marzo de 1984. Mediante notificación de 6 de marzo de 1984, la Registradora informó la negativa de inscripción de los referidos documentos porque "de la escritura ni de sus complementarios resulta la fecha de publicación en el periódico de los [e]dictos de [s]ubasta". El notario recurrente sometió escrito de recalificación el 20 de marzo de 1984 en el que alegó que "la referida Regla [51.8 (a)] le ofrece al promovente de la Venta Judicial la alternativa de publicar el aviso de venta o Edicto de Subasta, ya bien en la Colecturía y en la Escuela Pública más cercanas a la residencia conocida del demandado, o en un periódico de circulación general diaria en el Estado Libre Asociado de Puerto Rico, durante dos semanas y por lo menos una vez por semana". Alegó, además, que la publicación del edicto de subasta en un

---

(¹) Específicamente en el Tribunal Superior de Ponce, en el correo más cercano a dicho tribunal y en la Alcaldía del Municipio de Ponce.

periódico de circulación general no es un requisito mandatorio.

La Registradora recurrida notificó denegatoria final el 13 de abril de 1984 por los mismos fundamentos de la negatoria inicial. De dicha calificación recurre ante nos la C.R.U.V. mediante recurso gubernativo.

Por los fundamentos que a continuación exponemos confirmamos la calificación recurrida.

■ La referida Regla 51.8(a) de Procedimiento Civil en su parte pertinente dispone:

> *Aviso de venta.* Antes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía y en la escuela pública del lugar de la residencia del demandado, cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de dos (2) semanas y por lo menos una vez por semana.

Del texto de la regla transcrita surge que al recurrente no le asiste la razón. Ésta no le ofrece la alternativa —además del requisito mandatorio de la publicación en tres lugares públicos del municipio en que se efectuará la venta— de escoger entre los dos supuestos indicados en la segunda oración de la regla. Éstos aplican a dos situaciones posibles distintas entre sí. De conocerse la residencia del demandado, el aviso por lo menos debe colocarse en dos lugares públicos. [2] De no conocerse, existe la obligación de notificar la venta mediante aviso en un periódico de circulación general.

---

[2] No habría impedimento a que también se publique en un periódico. *Cf. Lawton* v. *Porto Rico Fruit Exchange,* 42 D.P.R. 291 (1931).

Es un hecho establecido que la C.R.U.V. no conocía el lugar de residencia de los demandados. Precisamente es este hecho el que los obliga a diligenciar el emplazamiento mediante la publicación de edictos, luego de someter declaraciones juradas en los respectivos casos acreditativas de tal hecho. Es por ello también que los casos se vieron en rebeldía. Procedía, por ende, la publicación del aviso de venta en un diario de circulación general y no el procedimiento adoptado por la C.R.U.V.

En *Federal Land Bank* v. *León*, 56 D.P.R. 887 (1940), al interpretar el Art. 251 del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. sec. 1132, equivalente a la actual Regla 51.8, ([3]) se sostuvo la validez de un procedimiento ejecutivo sumario a pesar de no haberse publicado los edictos de subasta en un periódico del distrito o de circulación general. Aparte de que de la opinión no surge claramente si la residencia de los demandados era conocida o no, en caso de entenderse que la misma permite no publicar el aviso en un diario cuando la residencia de la parte demandada no es conocida, esa decisión queda expresamente revocada. La Regla 51.8 es clara y de cumplimiento estricto.

La Registradora recurrida fundamenta su denegatoria en la facultad que le concede el tercer párrafo del Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267. Dicho artículo, fuente del principio de legalidad, limita la función calificadora del Registrador a los siguientes extremos:

*Calificación de documentos—Responsabilidad de Registradores; extensión de la calificación; documentos expedidos por Autoridad Judicial; documentos administrativos*

Los Registradores calificarán, bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas

---

([3]) En *Federal Land Bank* v. *León*, 56 D.P.R. 887 (1940), se resolvió, además, correctamente que el procedimiento se extendía a ventas judiciales de bienes inmuebles.

extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los Registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes.

Al calificar los documentos sujetos a registro, los Registradores no están facultados para apreciar la legalidad de las calificaciones efectuadas ni de los asientos extendidos con anterioridad por sus predecesores o por ellos mismos. Tales asientos así como los actos inscritos deberán estimarse válidos, hasta tanto los tribunales declaren su nulidad.

En cuanto a los documentos expedidos por la Autoridad Judicial, la calificación expresada se limitará: (1) a la jurisdicción y competencia del Tribunal; a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; (2) las formalidades extrínsecas de los documentos presentados; y (3) a los antecedentes del Registro.

Alega la Registradora recurrida que, por ser la escritura de venta judicial un documento expedido por autoridad judicial, su calificación podía extenderse a analizar "si se observaron en él los trámites y preceptos esenciales para su validez".

■ El documento cuya calificación se solicita no reviste el carácter de uno expedido por autoridad judicial. Es una escritura pública de compraventa judicial en ejecución de sentencia donde sólo comparece el alguacil como parte en su carácter oficial. Este solo hecho no es suficiente para adjudicarle la cualidad de documento judicial. La escritura pública de compraventa en que el funcionario judicial interviene en representación de uno de los otorgantes y ésta está autorizada por un notario, no puede considerarse como un documento expedido por autoridad judicial. Resoluciones del Tribunal Supremo de España de 29 de marzo de 1880, 26 de noviembre de 1884, 30 de marzo de 1885, 30 de mayo de 1898,

31 de marzo y 11 de julio de 1936. Véanse, además, J. M. Mena y San Millán, *Calificación Registral de Documentos Judiciales*, Barcelona, Ed. Bosch, 1985, pág. 43; B. Camy Sánchez-Cañete, *Comentarios a la legislación hipotecaria*, 3ra ed., Pamplona, Ed. Aranzadi, 1982, Vol. I, pág. 236 y Vol. VI, págs. 755–756. Igual solución es forzosa en el presente caso. La función calificadora del Registrador está limitada por lo dispuesto en el primer párrafo del Art. 64.

■ Sin embargo, dicha conclusión no varía el resultado en el presente caso, ya que la función de "examinar si los documentos presentados a registro, cuya toma de razón se solicita, contienen todas las circunstancias exigidas por la ley no es una exigencia privativa de los documentos judiciales, sino general . . .". E. Vázquez Bote, *Elementos de Derecho Hipotecario Puertorriqueño*, Barcelona, Artes Gráficas Medinaceli, 1973, págs. 307, 308. Véanse, además, *Negrón v. Registrador*, 104 D.P.R. 529, 535 (1976); *Nido & Cía., S. en C. v. Registrador*, 74 D.P.R. 789 (1953); H. M. Brau, *Apuntes para un curso sobre el estado del Derecho Inmobiliario Registral Puertorriqueño bajo la Ley Hipotecaria de 1893*, 48 Rev. Jur. U.P.R. 117, 201 (1979).

■ Según el primer párrafo del Art. 64, la calificación del Registrador comprende, entre otros, "la validez de los actos y contratos contenidos en tales documentos". El Art. 68(2) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2271(2), señala como falta que impide la registración del título presentado aquella que produce la nulidad del título. La Regla 51.8(a) de Procedimiento Civil expresamente declara que "[s]erá *nula* toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada . . .". (Énfasis suplido.) Roca Sastre señala, al hablar sobre este aspecto de la función calificadora, que "[e]l Registrador ha de comprobar si el acto jurídico en sí, o sea, el contenido de la escritura pública, es válido o nulo, tanto como tal como en sus

condiciones". R. M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, Vol. II, pág. 270. Añade que en ese aspecto "es donde el ámbito de la función calificadora del Registrador es amplísimo". Íd. Chico y Ortiz señala "que si lo que se inscribe es el 'título, el acto o el contrato', la calificación debe recaer sobre la validez del mismo". J. M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Cometa, 1981, T. I, pág. 669.

■ Los recurrentes no han demostrado que cumplieron los requisitos exigidos por la Regla 51.8(a) para la validez de la subasta celebrada. Debemos recordar que "en materia de venta judicial se proclama como postulado fundamental que no existe presunción a favor de que todo se ha hecho en forma adecuada por el Alguacil, por lo cual, incumbe al que compra probarle al Registrador que, mediante documento auténtico, se ha observado la ley". M. R. Aguiló, *La calificación de los documentos judiciales*, 77 Rev. Der. Puertorriqueño 83, 91 (1980). No lo ha hecho. Repetimos que los propios recurrentes sometieron declaraciones juradas que indican que los demandados no residían ya en las propiedades a ejecutarse. Expresan en su escrito ante nos que "los demandados fueron emplazados por edictos, ya que a pesar de las diligencias realizadas, no pudieron ser localizados en sus direcciones residenciales conocidas, para ser emplazados personalmente".

Por los fundamentos expuestos, *se dictará sentencia que confirme la resolución recurrida.*

El Juez Presidente Señor Pons Núñez no intervino. El Juez Asociado Señor Rebollo López emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

El Tribunal tiene la incuestionable facultad de interpretar estatutos y de pautar normas para regir los procedimien-

670

tos ante los tribunales de instancia. En la discusión que mandatoriamente procede previo al ejercicio de estas facultades, nunca se debe perder de vista los efectos —inmediatos y a largo plazo— que las normas resultantes tendrán sobre la profesión legal y nuestra ciudadanía en general. En otras palabras, el análisis interpretativo no debe ser mecánico, limitado exclusivamente a si la norma en el abstracto es "jurídicamente correcta"; procede que nos cuestionemos si la misma es sabia y práctica. De no serlo, es mandatorio que "atemperemos" tal norma.

I

El presente recurso nos brinda la oportunidad de interpretar las disposiciones de la Regla 51.8 (a) de las Reglas de Procedimiento Civil de 1979, ([1]) la cual dispone:

*51.8. Ventas judiciales*

*(a) Aviso de venta.* Antes de verificarse la venta de los bienes objeto de la ejecución, *deberá publicarse la misma* por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. *Se publicará, además, dicho aviso en la colecturía y en la escuela pública del lugar de residencia del demandado, cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de dos (2) semanas y por lo menos una vez por semana.* El aviso de venta describirá adecuadamente los bienes a ser vendidos y se referirá sucintamente además, a la sentencia a ser satisfecha mediante dicha venta, con expresión del sitio, día y hora en que habrá de celebrarse la venta. Si los bienes fueren susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de

([1]) La citada disposición no tiene equivalente en las Reglas de Procedimiento Civil de 1958; procede del derogado Art. 251 del Código de Enjuiciamiento Civil. Éste, por su parte, fue una "adaptación" de la Sec. 4482 de los Códigos Revisados del Estado de Idaho y de la Sec. 692 del Código de California. Véase *Mestres* v. *Díaz Román*, 50 D.P.R. 370 (1936).

publicación del aviso a menos de dos (2) semanas. *Será nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promoviere la venta sin cumplir con tal aviso.* (Énfasis suplido.)

Como podemos notar dicha disposición, respecto a la publicación del aviso de subasta, contiene dos requisitos: uno de carácter mandatorio y otro que está redactado en la alternativa. El primero de ellos resulta no sólo de fácil interpretación sino sabio y práctico, dado el objetivo principal de la disposición, cual es, lograr que el mayor número de compradores potenciales acuda a la venta. *Siempre* habrá que fijar el aviso de subasta en tres sitios públicos (tales como la alcaldía, el tribunal y la colecturía) del municipio en que habrá de celebrarse la venta judicial, lo que significa: el pueblo o ciudad en que radica el tribunal que ha conocido del caso en particular. Dada la accesibilidad a la venta, los vecinos de dicho municipio que estén interesados, podrán fácilmente acudir a la misma.

El requisito que sí requiere interpretación es el segundo. Una interpretación literal y restrictiva de los términos en que está concebido el mismo nos lleva a la interpretación que adopta una mayoría de este Tribunal en el presente recurso, esto es, que si el demandante conoce la residencia del demandado, viene obligado a fijar el aviso de venta en la colecturía y en la escuela pública del municipio donde este último reside. Si, por el contrario, el demandante la desconoce, viene obligado entonces a publicar dicho aviso en un diario de circulación general.

¿Resulta dicha norma sabia y práctica? Entendemos que respecto a la venta en pública subasta de inmuebles, no lo es. Veamos por qué:

Asumamos que un residente de Ponce es declarado "deudor" en un procedimiento ante el Tribunal Superior, Sala de Mayagüez. A requerimiento del demandante y para hacer

efectiva la sentencia dictada, la Sala de Mayagüez ordena la venta en pública subasta de un inmueble del deudor localizado en Fajardo. Si el demandante conoce la dirección de éste, según la interpretación que de la citada Regla 51.8 (a) hace una mayoría del Tribunal en el día de hoy, se tendrán que fijar los avisos de venta en Mayagüez y en Ponce, mas no en Fajardo. Procede que nos preguntemos: ¿habrá muchas personas residentes de Ponce y Mayagüez interesadas en comprar un inmueble en Fajardo? Dicho de otra forma, ¿acaso no es más lógico y razonable que se fijen los avisos de venta en la colecturía y escuelas públicas de Fajardo por cuanto las personas que más pueden estar interesadas en la compra de un inmueble en Fajardo son precisamente los residentes de dicho pueblo? De estar una persona interesada en adquirir una propiedad inmueble en un municipio en particular, ¿no resulta lo más razonable que acuda a los tablones de edictos de los sitios públicos de dicho municipio? Es por ello que se ha "considerado como altamente deseable que se anuncie la venta de tierra allí donde la tierra radique o en su vecindad". (Traducción nuestra.) 30 Am. Jur. 2d, *Executions*, Sec. 324.

A nuestro juicio, el Tribunal incurre en el error señalado por cuanto parte de la premisa —errónea, a nuestro entender— de que el propósito de la citada Regla 51.8 (a) es darle "notificación" al dueño-demandado. Es por ello que "exige" que si el demandante conoce la residencia del demandado, aquél viene obligado a fijar el aviso en la colecturía y escuela pública del municipio donde éste resida. Nada más alejado de la realidad y del sentido común.

Aparte de que el hecho de que ello así se haga no ofrece garantía alguna de que el dueño-demandado efectivamente se va a enterar de la venta, y de que dicho razonamiento es contrario a lo resuelto por este Tribunal en *Figueroa* v. *Banco de San Juan*, 108 D.P.R. 680 (1979) —donde resolvimos que "[e]n cuanto al procedimiento de ejecución, nada hay en la ley que exija la notificación al dueño de la propiedad durante

el trámite post sentencia"— somos del criterio que el verdadero propósito tras la referida Regla 51.8(a) es el de notificar y atraer el mayor número de compradores potenciales al acto de la subasta, fomentando de esa forma la competencia en precio, y evitando así el sacrificio de una propiedad —en perjuicio del dueño— por un precio irrisorio e irrazonable. ([2]) Ello no se logra fijando los avisos en el municipio donde reside el demandado sino haciéndolo en el municipio donde enclava el inmueble por cuanto ahí es el lugar donde reside el mayor número de personas que "conocen" el inmueble y que pueden estar realmente interesadas en la compra del mismo.

Esa fue la posición que este Tribunal acogió —interpretando un lenguaje similar contenido en el derogado Art. 251 del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. sec. 1132([3])— hace más de cuarenta y cinco (45) años en *Fed-*

---

([2])47 Am. Jur. 2d, *Judicial Sales*, Sec. 82 *et seq.*; 30 Am. Jur. 2d, *Executions*, Sec. 319 *et seq.*; 50 C.J.S., *Judicial Sales*, Sec. 10; 33 C.J.S., *Executions*, Sec. 211.

Como se expresara en *Standley* v. *Knapp*, 298 P. 109 (1931), interpretando la citada Sec. 692 del Código de California:

"The obvious purpose of the statute is to give as extended notice as the term 'public sale' would demand; to give notice to a sufficient number of people to insure the fairness of the sale and promote competitive bidding."

([3])*"Sec. 1132. Aviso de venta*

"Antes de verificarse la venta de los bienes objeto de la ejecución de la sentencia, deberá publicarse del modo siguiente:

"1. Si los bienes fueren susceptibles de deterioro se fijarán avisos escritos, anunciando la fecha y lugar de la venta, en tres sitios públicos del distrito o de la ciudad en que ha de celebrarse, y además, en la escuela del barrio o en la casa del comisario del barrio de la residencia del demandado, cuando ésta fuera conocida, por un tiempo razonable, habida consideración del carácter y naturaleza de los bienes.

"2. Si se tratare de otra propiedad personal, se fijará el aviso, por espacio de veinte días en tres sitios públicos del distrito o ciudad en que se hallaren los bienes, *y además, en la escuela del barrio o en la casa del comisario del barrio de la residencia del demandado, cuando ésta fuera conocida,* describiéndose en él aquéllos detalladamente con expresión del lugar en que haya de celebrase la venta; *o se publicará copia del dicho aviso, una vez por semana, durante el mismo período, en algún periódico, del distrito, si lo hubiere, y si no en un periódico de los de más circulación en el Estado Libre*

674

*eral Land Bank* v. *León,* 56 D.P.R. 887 (1940), posición que hoy se revoca expresamente.

No hay duda de que la dificultad con las disposiciones de la Regla 51.8(a) con la que hoy nos confrontamos viene arrastrándose desde hace muchos años; para ser más exactos, desde que se "adoptaron" los artículos correspondientes de los estados de Idaho y California, los cuales se convirtieron en el original Art. 251 del Código de Enjuiciamiento Civil. La "adaptación" que se hizo no fue completa. Así lo reconocimos en el antes citado caso de *Mestres* v. *Díaz Román,* 50 D.P.R. 370 (1936). A diferencia, por ejemplo, del artículo de ley de California(⁴) —donde se distingue entre "propiedad perece-

---

*Asociado de Puerto Rico.* Cuando la sentencia en cumplimiento de la cual se vendieren los bienes, exigiere que el pago se efectúe en determinada clase de moneda, los avisos prescritos por este artículo, deberán expresar la clase de moneda en que deban hacerse las posturas en dicha venta, cuya moneda habrá de ser la especificada en la sentencia." (Énfasis suplido.)

(⁴) El cual dispone, en lo pertinente, lo siguiente:

"Sec. 692. *Sale on execution or under power in mortgage or deed of trust; notice*

"Before the sale of property on execution or under power contained in any mortgage or deed of trust, notice thereof must be given as follows:

"1. *Perishable property.* In case of perishable property: by posting written notice of the time and place of sale in three public places in the city where the property is to be sold, if the property is to be sold in a city, or, if not, then in three public places in the judicial district in which the property is to be sold, for such time as may be reasonable, considering the character and condition of the property.

"2. *Personal property, generally.* In case of other personal property: by posting a similar notice in three public places in the city where the property is to be sold, if the property is to be sold in a city, or, if not, then in three public places in the judicial district in which the property is to be sold, for not less than five days nor more than 10 days.

"3. *Real estate.* In case of real property: by posting a similar notice particularly describing the property at least 20 days before date of sale, in one public place in the city where the property is to be sold if the property is to be sold in a city, or, if not, then in one public place in the judicial district in which the property is to be sold and publishing a copy thereof once a week for the same period, in some newspaper of general circulation printed and published *in the city in which the property or some part thereof is situated,* if any part thereof is situated in a city, if not, then in some newspaper of general circulation printed and published in the judicial district in

dera", "propiedad personal" y "propiedad inmueble" a ser ejecutada— al redactarse originalmente el citado Art. 251 se "redujo" dicha clasificación a dos grandes grupos: "bienes sujetos a deterioro" y "otra propiedad personal", omitiéndose las disposiciones respecto a bienes inmuebles, causando ello la dificultad con la que hoy nos confrontamos.

No debemos conformarnos con realizar una interpretación literal y mecánica de una disposición legal que es obviamente defectuosa e incompleta. Somos del criterio que tenemos la obligación de evitar que se siga perpetuando el error. Ello lo podemos lograr, dada la naturaleza de la disposición en controversia, poniendo en movimiento el mecanismo para que la misma sea enmendada. En el entretanto, como expresáramos en *Asociación de Propietarios* v. *Santa Bárbara Co.*, 112 D.P.R. 33, 39 (1982), se hace necesario que "en nuestra función rectora de interpretación subsanemos el error" promoviendo el verdadero propósito y objetivo de la disposición en controversia. El Tribunal, mediante la opinión que hoy emite, no cumple a cabalidad con dicha función. Es por ello que disentimos.

## II

Asumiendo, a los fines de la argumentación, que la interpretación que hoy hace el Tribunal sea la correcta, estimamos que en protección de los procedimientos llevados a cabo a nivel del tribunal de primera instancia hasta el día de hoy, la norma que se establece mediante la presente decisión debe tener efectos prospectivos.

---

which the property or some part thereof is situated, or, in case no newspaper of general circulation be printed and published in the city or judicial district, as the case may be, in some newspaper of general circulation printed and published in the county. Provided, that where real property is to be sold under power of sale contained in any deed of trust or under power of sale contained in a mortgage a copy of said notice shall be posted in some conspicuous place on the property to be sold, at least 20 days before date of sale." (Énfasis suplido.) 17 Cal. Code 245 *et seq.* (1955).

Ello es lo más justo. En primer lugar, la citada Regla 51.8(a) no es un modelo de claridad; se presta a confusión y a interpretaciones distintas. Por otro lado, es posible que cientos de nuestros compañeros abogados —confiando en una interpretación distinta basada en lo resuelto en el caso que hoy se revoca de *Federal Land Bank* v. *León*, ante— pueden haber aconsejado a sus clientes y/o pueden haber llevado a cabo ejecuciones de sentencia contrarias a lo aquí resuelto. En vista del decreto de nulidad que la citada Regla contiene, dicha situación puede causar una multiplicidad de litigios y anulación de transacciones comerciales ya realizadas, a menos que se decrete que la norma que hoy se establece tenga efectos prospectivos.