Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| BANCO POPULAR DE PUERTO RICO   Recurrido   v.   **PEDRO JUAN RIVERA AMADOR** Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR SU ESPOSA MERCEDES RIVERA VALDÉS; PREMIER FITNESS, INC.; QUIZNO´S CAFÉ, INC.; JOSÉ DANIEL RUIZ LOZADA   Peticionarios | KLCE202400170 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Superior de Bayamón   Caso Núm. D CD2011-2280   Sobre: Cobro de Dinero y Ejecución de Hipoteca por la vía ordinaria |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero, y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de marzo de 2024.

## I.

El 9 de febrero de 2024, el señor Pedro Juan Rivera Amador (señor Rivera Amador o peticionario) presentó un *Escrito de Certiorari* en el que solicitó que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 11 de enero de 2024, notificada y archivada en autos el 18 de enero de 2024.[1] Mediante el dictamen, el TPI declaró No Ha Lugar una solicitud del señor Rivera Amador para que se declarara nula una venta judicial de dos inmuebles, realizada como parte de la ejecución de una *Sentencia por las alegaciones* dictada por el foro primario en 2016.[2] En la misma, se le ordenó al

---

[1] Apéndice del *Escrito de Certiorari,* Anejo 1, pág. 1.
[2] Íd., Anejo 3, págs. 13-23.

Número Identificador
RES2024_____

peticionario y a su esposa, la señora Mercedes Rivera Valdés (señora Rivera Valdés), a pagar $1,018,261.80 más los intereses acumulados por varias anualidades no satisfechas.

El 12 de febrero de 2024, emitimos una *Resolución* en la que le concedimos al Banco Popular un término de diez (10) días para expresar su posición en cuanto a los méritos del recurso.

Ese mismo día, el señor Rivera Amador radicó un *Escrito acreditando notificación del recurso a través de correo electrónico a las partes y al TPI* en el que informó que notificó el recurso a la parte recurrida y al foro primario.

El 23 de febrero de 2024, el Banco Popular presentó un *Memorando en cumplimiento de orden y en oposición a la expedición de auto de certiorari* en el que solicitó que declaremos No Ha Lugar la solicitud de expedición de *certiorari* y confirmemos la *Orden* recurrida.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizaremos los hechos procesales atinentes al caso de autos.

**II.**

El caso de marras tiene su génesis el 9 de septiembre de 2011 cuando el Banco Popular presentó una *Demanda* en cobro de dinero y ejecución de hipoteca en contra del señor Rivera Amador, la señora Rivera Valdés y la sociedad legal de gananciales compuesta por ambos.[3] La reclamación se basó en que debían tres préstamos garantizados, a su vez, por una serie de pagarés hipotecarios sobre tres propiedades. La parte recurrida incluyó en el pleito varias compañías pertenecientes al peticionario, a saber, Premier Fitness Inc. y Quizno's Café, Inc.

---

[3] Íd., Anejo 2, págs. 2-12.

Luego de múltiples trámites procesales, el 25 de enero de 2016, el TPI emitió una *Sentencia por las alegaciones* en la que declaró Ha Lugar la reclamación del Banco Popular y, por consiguiente, ordenó al señor Rivera Amador y a la señora Rivera Valdés a pagar $1,018,261.80 más los intereses acumulados por varias anualidades no satisfechas, así como los intereses, recargos y el diez (10) porciento del principal de cada hipoteca para el pago de las costas, gastos y honorarios de abogado que provocó el litigio.[4] Como remedio, especificó que, una vez el dictamen adviniera final y firme, se ejecutarían mediante venta en pública subasta dos inmuebles pertenecientes al matrimonio.

Después de varios años, el 3 de mayo de 2023, el TPI emitió una *Orden de ejecución* en la que ordenó a la Secretaría del Tribunal librar un Mandamiento de Ejecución de Hipotecas, requiriendo así la venta en pública subasta de dos bienes inmuebles pertenecientes al señor Rivera Amador y la señora Rivera Valdés.[5] Los inmuebles fueron identificados como Propiedad A (Finca #59,892) radicada en el Barrio Minillas de Bayamón y Propiedad B (Finca #10,294) radicada en el Barrio Hato Tejas de Bayamón.

Posteriormente, la Secretaría del TPI emitió un *Mandamiento de Ejecución de Hipotecas* en cumplimiento de las órdenes del foro primario.[6] Luego, el 30 de agosto de 2023, el TPI emitió un *Aviso de venta* ordenando la venta en subasta pública de las dos propiedades inmuebles.[7]

---

[4] Notificada y archivada en autos el 5 de febrero de 2016. Íd., Anejo 3, págs. 13-23.

[5] Íd., Anejo 5, págs. 26-32.

[6] Este hecho procesal es mencionado por el peticionario en su recurso y en algunos documentos del expediente, tanto por el TPI como por el Banco Popular, pero no se incluye íntegramente como parte del Apéndice del *Escrito de Certiorari.* En vista de que el expediente digital del caso no se encuentra en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) no tenemos acceso al documento específico y, por ello, no podemos detallar con precisión la fecha de su presentación ni su contenido.

[7] Apéndice del *Escrito de Certiorari*, Anejo 8, págs. 43-51.

Tras varios trámites, los cuales incluyeron la paralización de los procedimientos por varias radicaciones de quiebra, tanto del señor Rivera Amador como por la señora Rivera Valdés, el 27 de noviembre de 2023, el Banco Popular presentó una *Moción para que se reanuden los procedimientos post sentencia para la ejecución de las hipotecas* en la que informó que el Tribunal de Quiebras para el Distrito de Puerto Rico dejó sin efecto la paralización de los procedimientos en contra de la señora y, en consecuencia, solicitó que el TPI reanudara la ejecución de la *Sentencia por las alegaciones* por medio de venta judicial.[8]

El 14 de diciembre de 2023, el Banco Popular radicó una *Moción para someter documentos sobre subastas* en la que incluyó, entre otras cosas, el *Aviso de venta*, los edictos publicados y declaraciones juradas sobre la publicación de los edictos en un periódico de circulación general y en un tablón de edictos.[9] En particular, para acreditar la publicación de los edictos anejó una declaración jurada de la señora Elba Llanos Rodríguez, representante del periódico Primera Hora, en la que expresó que los edictos del aviso de venta fueron publicados el 30 de noviembre de 2023 y el 7 de diciembre de 2023.

El 15 de diciembre de 2023, el TPI emitió un *Acta de primera subasta* para la Propiedad A[10] y otra, para la Propiedad B[11]. En cada una se consignó la venta de la propiedad, adjudicándose al Banco Popular, único licitador, y abonándose el precio al monto de la deuda.

El 20 de diciembre de 2023, el Banco Popular presentó una *Solicitud de orden de confirmación de venta y adjudicación* en la que solicitó al TPI que emitiera una *Orden de confirmación de venta y*

---

[8] Íd., Anejo 6, págs. 33-34.
[9] Apéndice de la oposición a expedición de *certiorari*, Anejo 3, págs. 8-87.
[10] Apéndice del *Escrito de Certiorari*, Anejo 11, págs. 56-59.
[11] Íd., Anejo 10, págs. 53-55.

*adjudicación* en la que confirmara que los bienes inmuebles fueron vendidos conforme a todos los requisitos del trámite de ejecución y que ordenara al Alguacil del Tribunal que dispusiera del precio de las ventas.[12] En la moción, se informó que:

> Se publicó el Aviso de Venta en el periódico de circulación general Primera Hora, dos (2) veces y por espacio de dos (2) semanas consecutivas con un intervalo de por lo menos siete (7) días entre ambas publicaciones, el 30 de noviembre y 7 de diciembre de 2023, según requerido en la Regla 51.7 de Procedimiento Civil vigente, y se dio publicidad por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres (3) sitios públicos del municipio de Bayamón, a saber: [...][13]

Según expresó la parte recurrida, el 15 de diciembre de 2023, se llevó a cabo la primera subasta de las propiedades antes mencionadas. Sobre ello, consignó lo siguiente:

> 6. A esos efectos, compareció la parte demandante, representada por el Lcdo. Pedro E. Ruiz Meléndez. Anunciada en voz alta la venta de la Finca #59,892, el Alguacil se dispuso a recibir ofertas no menores de $286,000.00, tipo mínimo fijado para la primera subasta. Como único licitador compareció el Lcdo. Pedro E. Ruiz Meléndez, en representación de Banco Popular de Puerto Rico, quien ofreció $286,000.00, para abonar a la sentencia, y no habiendo quien mejorara dicha oferta, se adjudicó la buena pro a Banco Popular de Puerto Rico, por la cantidad de $286,000.00, en abono a la deuda, no existiendo transferencia de Dinero.
>
> 7. Asimismo, anunciada en voz alta la venta de la Finca #10,294, el Alguacil se dispuso a recibir ofertas no menores de $617,500.00, tipo mínimo fijado para la primera subasta. Como único licitador compareció el Lcdo. Pedro E. Ruiz Meléndez, en representación de Banco Popular de Puerto Rico, quien ofreció $617,500.00, para abonar a la sentencia, y no habiendo quien mejorara dicha oferta, se adjudicó la buena pro a Banco Popular de Puerto Rico, por la cantidad de $617,500.00, en abono a la deuda, no existiendo transferencia de dinero.[14]

El 8 de enero de 2024, el TPI emitió una *Orden de confirmación de adjudicación o venta judicial* en cuanto a la Propiedad A[15] y otra, en cuanto a la Propiedad B.[16] En cada una, el foro primario validó las ventas judiciales realizadas.

---

[12] Íd., Anejo 12, págs. 60-66.
[13] Íd., pág. 62.
[14] Íd., págs. 64-65.
[15] Notificada y archivada en autos el 10 de enero de 2024. Apéndice de la oposición a expedición de *certiorari*, Anejos 14, págs. 231-232.
[16] Notificada y archivada en autos el 10 de enero de 2024. Íd., Anejo 15, págs. 235-236.

Ese mismo día, el señor Rivera Amador radicó un *Escrito urgente asumiendo co-representación legal, solicitando nulidad de venta judicial por incumplimiento con la Regla 51.7 de las de Procedimiento Civil de Puerto Rico, paralización de los procesos y celebración de vista* en el que solicitó, entre otras cosas, que el TPI declarara nula la venta judicial por incumplimiento con el requisito impuesto por la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.7, de que el aviso de venta judicial debe ser publicado mediante edicto dos veces con un intervalo de por lo menos siete días entre ambas publicaciones.[17]

El 11 de enero de 2024, el TPI emitió la *Orden* recurrida en la que declaró No Ha Lugar los remedios solicitados por el peticionario.[18]

El 9 de febrero de 2024, el señor Rivera Amador presentó el recurso de epígrafe y solicitó que revoquemos la *Orden*. En su escrito, le imputó al TPI la comisión de los siguientes dos errores:

> Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR la Solicitud de Nulidad de Venta Judicial a pesar del Incumplimiento de la parte demandante en la Publicación de los Avisos de Venta, en virtud de la Regla 51.7 de las de Procedimiento Civil de Puerto Rico.

> Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR la Solicitud de Nulidad de Venta Judicial a pesar de que la publicación de los Avisos de Venta no cumplió con el intervalo de tiempo exigido en la Regla 51.7 de las de Procedimiento Civil de Puerto Rico.

En suma, argumentó que la venta judicial fue nula porque se incumplió con el intervalo de tiempo que la Regla 51.7 de Procedimiento Civil, *supra,* requiere que haya entre las dos publicaciones por edicto del aviso de venta judicial. Según planteó, la segunda publicación no podía ocurrir antes del 8 de diciembre, puesto que, de esa forma, únicamente habrían transcurrido seis (6) días entre ambas fechas. Su posición es que el incumplimiento con

---

[17] Apéndice del *Escrito de Certiorari*, Anejo 13, págs. 67-74.
[18] Notificada y archivada en autos el 18 de enero de 2024. Íd., Anejo 1, pág. 1.

los requisitos de publicación de los avisos de venta provoca la nulidad de la venta judicial efectuada y, por ello, solicitó que revoquemos el dictamen del foro primario y la declaremos nula.

El 23 de febrero de 2024, el Banco Popular radicó un *Memorando en cumplimiento de orden y en oposición a la expedición de auto de certiorari* en el que solicitó que deneguemos la expedición del auto de *certiorari* solicitado y confirmemos la *Orden* recurrida en todos sus extremos. Es su posición que no existe razón bajo los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, que justifique intervenir con la decisión del TPI. Asimismo, arguyó que la definición de *término* dispuesta en la Regla 68.1 de Procedimiento Civil, *supra*, R. 68.1, no puede aplicarse selectivamente y, por ello, el cómputo de los siete (7) días dispuestos en la Regla 51.7 de Procedimiento Civil, *supra*, debe hacerse como cualquier otro término. De esta forma, argumentó que, entre ambas publicaciones, existió un intervalo de por lo menos siete (7) días, en cumplimiento con los requisitos de la referida regla. Por último, también señaló que el peticionario no levantó objeción alguna en otras tres ocasiones anteriores en las que se publicaron los edictos en el mismo intervalo de tiempo. Sin embargo, en esas ocasiones, el proceso se vio paralizado por otras razones, como la pandemia, dos radicaciones de quiebra por el señor Rivera Amador y una por la señora Rivera Valdés.

En adelante, esbozamos los fundamentos en derecho que ilustran nuestra determinación.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG***

***Builders et al. v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[19] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.,*** 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, establece los criterios que

---

[19] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[20]

**B.**

La Regla 51 de Procedimiento Civil, *supra*, R. 51 regula los procedimientos de ejecución de sentencia en los casos civiles. En particular, la Regla 57.1 de Procedimiento Civil, *supra*, establece las disposiciones específicas aplicables a la venta judicial y los requisitos procesales para su validez. En lo pertinente, prescribe lo siguiente:

> (a) *Aviso de venta*. Antes de verificarse la venta de los bienes objeto de la ejecución, ésta deberá darse a la publicidad por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres (3) sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía.
>
> **Dicho aviso será publicado, además, mediante edictos dos (2) veces en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, y por espacio de dos (2) semanas consecutivas, con un <u>intervalo de por lo menos siete días entre ambas publicaciones.</u>** Copia del aviso será enviada al deudor o deudora por sentencia y a su abogado o abogada vía correo certificado con acuse dentro de los primeros cinco (5) días de publicado el primer edicto, siempre que haya comparecido al pleito. Si el deudor o la deudora por sentencia no comparece al pleito, la notificación será enviada vía correo certificado con acuse a la última dirección conocida.
>
> **En todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no ha cumplido con alguno de los requisitos de esta regla, el tribunal, a solicitud de parte, celebrará una vista para resolver la controversia planteada.** El aviso de venta describirá adecuadamente los bienes que se venderán y hará referencia sucintamente, además, a la sentencia que se satisfará mediante dicha venta, con expresión del sitio, el

---

[20] Esta Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

día y la hora en que se celebrará la venta. Si los bienes son susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación del aviso a menos de dos (2) semanas. **Será nula toda venta judicial que se realice sin cumplir con el aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promueva la venta sin cumplir con tal aviso.**
[...] (Énfasis y subrayado nuestro). Íd.

Sobre estas disposiciones procesales, nuestro Tribunal Supremo ha sido claro: los requisitos de publicación y notificación de la venta judicial son requerimientos del debido proceso de ley. *R&G v. Sustache,* 163 DPR 491, 499 (2004); *Lincoln Savs. Bank v. Figueroa,* 124 DPR 388 (1989); *C.R.U.V. v. Registrador,* 117 DPR 662 (1986). De esta forma, ha reconocido que publicar el aviso sin cumplir con la forma indiciada en la ley o incurrir en otros vicios o defectos sustanciales provoca la nulidad de la subasta. Íd., pág. 500; *Atanacia Corp. J.M. Saldaña, Inc.,* 133 DPR 284 (1993).

### C.

Debido a la controversia que presenta este caso, resulta imperativo estudiar la norma aplicable al cálculo de términos en los casos civiles. La Regla 68.1 de Procedimiento Civil, *supra*, R. 68.1, prescribe la forma en la que se computan los términos dispuestos en las reglas y provistos por los tribunales. En lo pertinente, dispone que:

En el cómputo de cualquier término concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a transcurrir. El último día del término así computado se incluirá siempre que no sea sábado, domingo ni día de fiesta legal, extendiéndose entonces el plazo hasta el fin del próximo día que no sea sábado, domingo ni día legalmente feriado. También podrá suspenderse o extenderse cualquier término por causa justificada cuando el Tribunal Supremo de Puerto Rico lo decrete mediante resolución. Cuando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo. Medio día feriado se considerará como feriado en su totalidad. (Subrayado nuestro). Íd.

### IV.

Tras un análisis objetivo, sereno y cuidadoso del recurso de epígrafe, a la luz de los criterios esbozados tanto en la Regla 52.1 de

Procedimiento Civil, *supra,* como en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* resolvemos que debemos abstenernos de ejercer nuestra función revisora. A nuestro juicio, no atisbamos motivo o error alguno que amerite nuestra intervención. La determinación del foro primario es esencialmente correcta en derecho. De los autos no surge que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción al emitir el dictamen recurrido. No intervendremos con ese dictamen, en esta etapa de los procedimientos. En consecuencia, denegamos el recurso de *certiorari* solicitado por el peticionario.

**V.**

Por los fundamentos pormenorizados, se *deniega* la expedición el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones